UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

WAYNE JUNIOR WILLIAMS,

        Petitioner,

v.

                                           Case No. 2:12-cv-314
                                           HON. ROBERT HOLMES BELL

JEFFREY WOODS,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

        Petitioner Wayne Junior Williams filed this petition for writ of habeas corpus challenging his jury convictions of felony murder, assault with intent to rob while armed, armed robbery, felon in possession of a firearm, and four counts of use of a firearm during the commission of a felony.  Petitioner was sentenced to life without parole for the felony murder conviction, life for the armed robbery and assault with intent to rob while armed convictions, 4 to 10 years for the felon in possession of a firearm conviction, and 2 years for each of the felony-firearm convictions.  The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts.  The parties have briefed the issues and the matter is now ready for decision.

        Petitioner's application for habeas corpus relief sets forth the following claims:

      I.        Petitioner was denied his right to confrontation and the trial court abused its discretion by admitting an alleged accomplice's statement as a "statement against penal interest."

II.      Petitioner was denied a fair trail by the introduction of highly inflammatory, inadmissible evidence of his alleged reputation for dangerousness when his character was not in issue, and by insinuations that he had threatened a witness.

III.     The prosecutor committed misconduct by improperly vouching for the credibility of the star prosecution witness.

IV.    Petitioner was denied the right to the effective assistance of counsel where his trial attorney failed to present several alibi witnesses, and had they been presented, there was a reasonable probability that the result of the proceeding would have been different.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams*

*v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption

- 3 -

of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*,

161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

        Petitioner claims that he was denied his constitutional right to confront the witnesses

against him because the trial court allowed into evidence statements made by Petitioner's

accomplice, Wright, to their mutual childhood friend, Bowman, admitting guilt in this case. The

Michigan Court of Appeals rejected this claim explaining:

> Defendant argues that the admission of codefendant Amsie Wright's
> hearsay statement denied him of his right of confrontation. "An
> accuser who makes a formal statement to government officers bears
> testimony in a sense that a person who makes a casual remark to an
> acquaintance does not." *Crawford v. Washington*, 541 US 36, 51;
> 124 S Ct 1354; 158 L Ed 2d 177 (2004). In this case, Wright's
> statements were made to his friend, John Bowman, and not to a
> governmental official. In addition, "there is nothing to indicate that
> the statement[] [was] made with the intent to preserve evidence for
> later possible use in court." *People v. Bauder*, 269 Mich App 174,
> 182; 712 NW2d 506 (2005). Accordingly, Wright's statement to
> Bowman was nontestimonial; thus, no Confrontation Clause violation
> occurred. *Id.*; *Crawford*, 541 US at 50-52, 59, 61, 68.

Michigan Court of Appeals decision at 1, (Docket #7-1).

        In *Crawford v. Washington*, the United States Supreme Court held that the application

of the Confrontation Clause does not apply to nontestimonial statements. *Crawford v. Washington*,

541 U.S. 36, 51 (2004).

> [The Confrontation Clause] applies to "witnesses" against the
> accused—in other words, those who "bear testimony." 2 N. Webster,
> An American Dictionary of the English Language (1828).
> "Testimony," in turn, is typically "[a] solemn declaration or
> affirmation made for the purpose of establishing or proving some
> fact." *Ibid.* An accuser who makes a formal statement to government
> officers bears testimony in a sense that a person who makes a casual
> remark to an acquaintance does not. The constitutional text, like the
> history underlying the common-law right of confrontation, thus
> reflects an especially acute concern with a specific type of out-of-
> court statement.

*Id.*  The statements Wright made in confidence to his childhood friend Bowman were not testimonial in nature, and therefore do not implicate the Confrontation Clause.

Petitioner further argues that the trial court abused its discretion by admitting an alleged accomplice's statements as "statements against penal interest."  The Michigan Court of Appeals rejected this claim explaining:

> In *Barrera*, 451 Mich at 264, the Court indicated:
>
> In evaluating whether a statement against penal interest that inculpates a person in addition to the declarant bears sufficient indicia of reliability to allow it to be admitted as substantive evidence against the other person, courts must evaluate the circumstances surrounding the making of the statement as well as its content.
>
> The presence of the following factors would favor admission of such a statement: whether the statement was (1) voluntarily given, (2) made contemporaneously with the events referenced, (3) made to family, friends, colleagues, or confederates—that is, to someone to whom the declarant would likely speak the truth, and (4) uttered spontaneously at the initiation of the declarant and without prompting or inquiry by the listener. [Citation omitted.]

In this case, Wright voluntarily told Bowman about his involvement and that of defendant in the crimes.  Although Wright's statement was not made contemporaneously with the crimes, Bowman did not hear about the instant crimes sooner because he was incarcerated until 2004.  Further, the statement was made to Bowman because he, Wright, and defendant were all good friends who confided in each other and discussed the crimes that each committed.  Thus, the record supports that Wright would likely speak the truth to Bowman.  Moreover, although Bowman did not testify whether he initiated the conversation about the crimes, Bowman indicated that it was their common practice to discuss their crimes.  Based on the foregoing, Wright's statement bore sufficient indicia of reliability to be admitted as substantive evidence against defendant.  *Id.* at 274.  Moreover, the incriminating statement so far tended to subject Wright to criminal

liability "that a reasonable person in the declarant's position would
not have made the statement unless believing it to be true." MRE
804(b)(3). "[T]he statement's reliability flows from the postulate that
a reasonable person will not incriminate himself by admitting a
damaging fact unless he believes that fact to be true." *Barrera*, 451
Mich at 271-272.  Based on the foregoing, the trial court did not
abuse its discretion when it admitted Wright's statement. *Lukity*, 460
Mich at 488; *Barrera*, 451 Mich at 268-269.

Michigan Court of Appeals decision at 2-3, (Docket #7-1).

The United States Supreme Court has consistently held that "a state court's
interpretation of state law, including one announced on direct appeal of the challenged conviction,
binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle
v. McGuire*, 502 U.S. 62, 67-68 (1991); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  Due to this
well established precedent, this Court may not review the Michigan Court of Appeals' interpretation
of state evidentiary rules.  Furthermore, it is not within the providence of federal courts to "to peer
majestically over the [state] court's shoulder so that [they] might second-guess its interpretation of
facts that quite reasonably-perhaps even quite plainly-fit within the statutory language."  Lewis v.
Jeffers, 497 U.S. 764, 780 (1990) (citing *Godfrey v. Georgia* 446 U.S. 420, 450 (1980) (WHITE, J.,
dissenting) (footnote omitted).  Therefore, this Court shall not review the Michigan Court of
Appeals' findings that the trial court did not abuse its discretion.  In the opinion of the undersigned,
Petitioner has failed to show that the Michigan Court of Appeals' decision was contrary to, or
involved an unreasonable application of, clearly established federal law as determined by the
Supreme Court of the United States; or was based upon an unreasonable determination of the facts
in light of the evidence present in the state court proceeding.

Petitioner asserts two procedurally defaulted claims of prosecutorial misconduct. The
Michigan Court of Appeals rejected both claims explaining:

Defendant also argues that the prosecutor was not permitted to attack defendant's character because defendant did not put his character in issue, and the challenged testimony implied that defendant had threatened Sandra Mattox.  Moreover, defendant argues that although the trial court sustained defendant's objection to Mattox's testimony about defendant's reputation for treachery and dangerousness, the damage was done and the jury already heard unfairly prejudicial testimony.   Accordingly, defendant argues that there was prosecutorial misconduct as a result of the testimony and the trial court erred in admitting the testimony.   We review defendant's unpreserved claim of prosecutorial misconduct for plain error that affected his substantial rights, *People v Thomas*, 260 Mich App 450, 453-454; 678 NW2d 631 (2004), and a trial court's decision to admit or exclude evidence for an abuse of discretion.  *Lukity*, 460 Mich at 488.

The record shows that the prosecutor was questioning Mattox as to why she did not provide the information she knew about the crimes to the police sooner.   "As a general rule, unresponsive testimony by a prosecution witness does not justify a mistrial unless the prosecutor knew in advance that the witness would give the unresponsive testimony or the prosecutor conspired with or encouraged the witness to give that testimony."  *People v Hackney*, 183 Mich App 516, 531; 455 NW2d 358 (1990).  In this case, when Mattox indicated that she did not know the defendant, the prosecutor simply asked, "[W]hat would that mean?"  Mattox then responded by indicating that defendant was treacherous and had a reputation in Grand Rapids, which was not responsive to the prosecutor's question.  Id.  In addition, there is no indication that the prosecutor knew that Mattox would make these statements about defendant.  Id.  We conclude that the prosecutor did not engage in misconduct.

Further, although "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," MRE 404(b)(1), the simple fact is that the prosecutor did not deny defendant a fair and impartial trial because inadmissible propensity evidence under MRE 404(b) was not referenced by the prosecutor.  Accordingly, there was no plain error affecting defendant's substantial rights, *Thomas*, 260 Mich App at 453-454, and there is no indication that the fairness, integrity, or public reputation of the judicial proceedings were affected, *People v Ackerman*, 257 Mich App 434, 448-449; 669 NW2d 818 (2003).

- 7 -

We also note that after defendant objected to Mattox's statement, the trial court quickly indicated that the statement was hearsay and sustained defendant's objection. The prosecutor did not return to the challenged area, and defendant did not request a curative instruction at the time the statements were made and does not argue on appeal that a curative instruction should have been given. Moreover, the trial court instructed the jury that they "may only consider the evidence that has been properly admitted in this case" and, clearly, this evidence was not properly admitted. There was no abuse of discretion. *Ackerman*, 257 Mich App at 448-449; *Lukity*, 460 Mich at 488.

Defendant next argues that the prosecutor improperly vouched for its "critical" witness, Bowman, arguing that he was testifying truthfully because if he lied at defendant's trial, the federal authorities would know and he would have to serve life in prison. Accordingly, defendant argues that reversal is warranted because a curative instruction could not have alleviated the prejudicial effect. We review unpreserved issues of prosecutorial misconduct for plain error that affected defendant's substantial rights. *Thomas*, 260 Mich App at 453- 454.

A prosecutor is not allowed to vouch for the credibility of his witness by implying that he has special knowledge that the witness is testifying truthfully. *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). However, a prosecutor is "free to argue the evidence and all reasonable inferences from the evidence . . . ." *Id*. at 282. A prosecutor may also argue from the facts that a witness is credible. *People v Unger*, 278 Mich App 210, 240; 749 NW2d 272 (2008). And, "a prosecutor may comment on his own witnesses' credibility during closing argument." *Thomas*, 260 Mich App at 454. Further, "[t]he credibility of a witness is always an appropriate subject for the jury's consideration" and "[e]vidence of a witness' bias or interest in a case is highly relevant to credibility." *People v Coleman*, 210 Mich App 1, 8; 532 NW2d 885 (1995).

We conclude that the prosecutor's comments about Bowman's credibility did not constitute improper vouching because the prosecutor did not assert special knowledge that Bowman was testifying truthfully. *Thomas*, 260 Mich App 455. In context, the prosecutor was arguing that the jury had to judge credibility and should base its judgment on the facts and circumstances. *Unger*, 278 Mich App at 240; *Thomas*, 260 Mich App at 454; *Coleman*, 210 Mich App at 8. Bowman testified that the only reason he was testifying against defendant was because Bowman had "caught a federal case,"

and that by testifying against defendant, Bowman was avoiding a life sentence. Consequently, the facts on which the prosecutor's argument was based are in the record, and the prosecutor was not implying that he had special knowledge. *Bahoda*, 448 Mich at 276, 282. Thus, there was no plain error, *Thomas*, Mich App at 453-454, and just as importantly, defendant's substantial rights were not affected because there was ample evidence of his guilt. *Id*. Further, any prejudice flowing from the prosecutor's remarks was mitigated by the jury instructions. *Bahoda*, 448 Mich at 281.

Michigan Court of Appeals decision at 3-4, (Docket #7-1).

"If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings, as state law may require – procedural default will bar federal review." *Magwood v. Patterson*, 561 U.S. 320, 130 S. Ct. 2788, 2801 (2010). Nevertheless, the U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

Misconduct by a prosecutor can rise to the level of a due process violation. *Lundy v. Campbell*, 888 F.2d 467, 474 (6th Cir. 1989). However, before habeas corpus relief becomes available, the misconduct must be so egregious as to deny petitioner a fundamentally fair trial. *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir.1993). The habeas court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). In addition, the court may view any misconduct in light of the strength of the competent proofs tending to establish guilt. *See Angel v. Overburg*, 682 F.2d 605, 608 (6th Cir. 1982) (*en banc*). "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis ... is the fairness of the trial, not the culpability of the prosecutor.'" *Serra*, 4 F.3d at 1355 (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).

Petitioner's first prosecutorial misconduct claim stems from Mattox testifying that Petitioner is known to be dangerous, and an insinuation by the prosecution that Petitioner threatened Mattox. However, the issue of Petitioner's character only arose when Mattox answered a question at trial in a non-responsive way. Petitioner objected to Mattox's statements as hearsay, and the trial court sustained the objection. The prosecution never returned to the issue of Petitioner's character, and the jury instructions mitigated any prejudice that may have arose from Mattox's testimony by clearly indicating that improperly admitted evidence may not be considered when rendering a verdict. Petitioner fails to show that the prosecutor's actions were improper, or denied Petitioner a fundamentally fair trial.

Petitioner also claims that the prosecution improperly vouched for Bowman's credibility. The federal courts have generally recognized two types of objectionable vouching. *See*

- 10 -

*Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir. 2008); *Brown v. McKee*, 231 F. App'x 469, 478 (6th Cir. 2007) (citing *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999)); *but see Wogenstahl v. Mitchell*, No. 07-4285, slip op. at 22-23 (6th Cir. Feb. 2, 2012) (treating the two aspects of vouching as part of a single standard).   The first type occurs when a "prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the United States Attorney behind the witness." *Francis*, 170 F.3d at 550; *United States v. Carroll*, 26 F.3d 1380, 1388-89 (6th Cir. 1994); *Drew v. Collins*, 964 F.2d 411, 419 (5th Cir. 1992).   The second type of impermissible vouching occurs when the prosecutor invites the jury to believe that there is other evidence, known to the prosecutor but not introduced into evidence, justifying the prosecutor's belief in the witness's credibility.   *See Francis*, 170 F.3d at 551; *United States v. Medlin*, 353 F.2d 789, 796 (6th Cir. 1965);  *Henderson v. United States*, 218 F.2d 14, 19 (6th Cir. 1955).   Neither type of vouching is involved in this case.

The prosecution did not assert a personal belief as to Bowman's credibility, nor did the prosecutor imply the existence of any evidence justifying his belief that Bowman's testimony was truthful.   Instead, Bowman testified that the only reason he was testifying against Petitioner was to avoid a life sentence in a different federal case.   The prosecutor was not improperly vouching when he referenced this fact as a means of establishing Bowman's credibility.   In the opinion of the undersigned, Petitioner has failed to show that the Michigan Court of Appeals' decisions pertaining to prosecutorial misconduct were contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or was based upon an unreasonable determination of the facts in light of the evidence present in the state court proceeding.

Petitioner claims that his trial counsel was ineffective for failing to present several of petitioner's alibi witnesses. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court recently has observed, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 131 S. Ct. 733, 740 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th

- 12 -

Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficult of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Richter*, 131 S. Ct. at 786).

Petitioner claims that his trial counsel was aware of several witnesses who could provide Petitioner with an alibi, and asserts that by not using their testimony at trial, his counsel was ineffective. However, trial counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91; *see also Meeks v. Bergen*, 749 F.2d 322, 328 (6th Cir. 1984).

Petitioner does not assert that trial counsel did not contact these witnesses, interview them, or conduct the appropriate legal research needed to apply their possible testimony to Petitioner's case. Instead, Petitioner argues that because these witnesses would testify on his behalf, counsel should have included them in the trial strategy. However, all of the witnesses proffered by Petitioner are family members or close friends, and the "partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.'" *Davis v. Alaska*, 415 U.S. 308, 316 (1974). It is well within the bounds of reasonableness to infer that counsel strategically chose not present these witnesses, as they all suffer from bias.

Petitioner's assertion regarding alibi witnesses fails to overcome the strong presumption that trial counsel's actions were within the bounds of reasonable professional assistance. And where counsel's performance did not fall below an objective standard of reasonableness, the court need not reach the question of prejudice. *See United States v. Foreman*, No. 01-3892, slip op. at 8-9 (6th Cir. March 25, 2003).

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court deny Petitioner's request for an evidentiary hearing and dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. Mcdaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b);

W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated: July 14, 2015                                    /s/ TIMOTHY P. GREELEY
                                                       TIMOTHY P. GREELEY
                                                       UNITED STATES MAGISTRATE JUDGE